## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH WITHERSPOON,

      Petitioner,                                   Case No. 14-14888
                                                      HONORABLE TERRENCE G. BERG
v.                                                    UNITED STATES DISTRICT JUDGE

RANDALL HAAS,

      Respondent.

_____/

### OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY; AND (3) LEAVE TO APPEAL *IN FORMA PAUPERIS*

Kenneth Witherspoon, ("petitioner"), confined at the Cotton Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a); kidnapping, Mich. Comp. Laws § 750.349; and first-degree home invasion, Mich. Comp. Laws § 750.110a(2).  For the reasons stated below, the application for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

### I.  FACTUAL BACKGROUND

Petitioner was convicted following a jury trial in the Macomb County Circuit Court.  This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

*See Wagner v. Smith,* 581 F. 3d 410, 413 (6th Cir. 2009):

> The prosecution presented the preliminary examination testimony of a victim, Samantha Wright, in which Wright testified that four gloved men broke into her house and tied her up, as well as tying up her fiancé Rico White and her son. [1] At least three of the men were armed. The men then forced the family into a Ford Expedition and took them to another location. Viewed in a light most favorable to the prosecution, this evidence was sufficient to establish the elements of kidnapping and first-degree home invasion.
>
> In addition, the police and medical examiner testified that they discovered White's body in a vacant lot in Detroit. White had been shot six times in the back of the head. The evidence established that the shots were in rapid succession and occurred over a short period of time while the shooter was standing behind the victim. This was sufficient to establish the elements of first-degree premeditated murder.
> ********************************************************************
> [T]he prosecution presented DNA evidence and cell phone records that linked [petitioner] to the crimes. As discussed previously, defendant's DNA was present inside the white work gloves recovered from the Ford Expedition. These gloves had White's blood on them. Moreover, the cell phone records indicated that, at the time of the killing, defendant was near the location where White's body was later discovered. The phone records also established that, during the time the crime was taking place, defendant uncharacteristically did not make any cell phone calls.

*People v. Witherspoon*, No. 300875, 2013 WL 1352435, at *3-4 (Mich. Ct. App. Apr. 5, 2013)(internal citations omitted).

Petitioner's conviction was affirmed on appeal. *Id., lv. Den.* No. 147180, 2013

WL 10776596 (Mich. Sept. 30, 2013).

---

[1] Wright had testified via telephone at the preliminary examination of defendant's cousin, Herbert Jamal Witherspoon, who was tried separately before the Macomb Circuit Court and convicted of similar offenses.  Wright's transcribed testimony from Herbert's preliminary examination was read into evidence at defendant's trial. The use of Wright's preliminary examination testimony at defendant's trial is discussed more fully in part VIII of this opinion. (Footnote original).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel when trial counsel agreed to waive the court appearance of a key witness who provided testimonial evidence by telephonic means in a codefendant's trial and counsel failed to object on confrontational rights grounds to having that witness's telephonic testimony from a codefendant's trial admitted as substantive evidence at Petitioner's trial.

II. The state trial court erred in admitting the Bode Technologies Laboratory result as testimonial evidence on the issue of Petitioner's identity through DNA evidence because the laboratory analyst who conducted the test should have been cross-examined about a second donor of DNA evidence who was the likely killer.

III. Petitioner's trial counsel was ineffective stipulating to the admission of the Bode Technologies laboratory report, given its testimonial hearsay nature and opting not to call the laboratory analyst to cross-examine him regarding serious flaws in his report on the key issue of identification of a second person as being the killer through DNA evidence.

IV. The trial court unlawfully deprived Petitioner of his due process and equal protection rights when it denied his motions for directed verdict of acquittal on the basis of insufficient evidence of identity of Petitioner as the killer in light of the Bode Technologies lab report showing more than one possible donor had worn the gloves used in the murder.

V. Petitioner was denied a constitutional right to a fair trial on the basis of multiple instances of prosecutor misconduct when the prosecutor (1) made false statements that were purposefully misleading about the presence of a second DNA source inside the gloves found at the murder scene; and (2) repeatedly badgered the defense's DNA expert witness about irrelevant matters regarding her dismissal from the Michigan State Police and her dislike of her former coworkers.

VI. The trial court unlawfully sentenced Petitioner to lengthy prison terms of 285-600 months for kidnapping and 120-240 months for first degree home invasion convictions when it failed to consider mitigating factors when sentencing Petitioner.

3

## II.  LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA),

imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a

state court decision unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the

writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or

incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our

4

federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## III.  ANALYSIS

### A.  Ineffective Assistance of Counsel

The Court discusses Petitioner's first, third, and a portion of Petitioner's fifth claims together because they allege the ineffective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that

counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at

6

123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

In his first claim, Petitioner argues that trial counsel was ineffective for waiving the court appearance of Samantha Wright and for failing to object to her telephonic testimony from the co-defendant's preliminary examination being admitted into evidence at Petitioner's trial, on the ground that its admission violated Petitioner's Sixth Amendment right to confrontation.

7

Wright testified via telephone at the preliminary examination of Petitioner's cousin, Herbert Jamal Witherspoon. Wright's transcribed testimony from this preliminary examination was read to the jury at Petitioner's trial, as substantive evidence for the prosecution. Trial counsel stipulated to the admission of Wright's transcribed testimony from Herbert's preliminary examination. The Michigan Court of Appeals remanded the matter to the trial court for an evidentiary hearing concerning the use of this prior testimony from the co-defendant's preliminary examination. *People v. Witherspoon*, Nos. 300875 & 302711 (Mich.Ct.App. March 16, 2012). In rejecting petitioner's claim, the Michigan Court of Appeals noted that:

> Following the evidentiary hearing, at which defendant's attorney and several other witnesses testified, the trial court issued a thorough opinion and order responding to our inquiries. The trial judge made several well-supported findings of fact, including: (1) it was actually Wright who had testified via telephone at Herbert's preliminary examination; (2) Wright had been properly sworn before giving her telephonic testimony at Herbert's preliminary examination; (3) there existed "good cause" under MCR 6.006(B) to allow Wright to testify via telephone at Herbert's preliminary examination; (4) Herbert's attorney had a full and adequate opportunity to cross-examine Wright over the telephone at the preliminary examination; (5) counsel stipulated to the use of Wright's testimony from Herbert's preliminary examination at defendant's trial; and (7) counsel believed that using Wright's testimony from Herbert's preliminary examination would not prejudice defendant because Wright had never identified him in her testimony.

*People v. Witherspoon*, 2013 WL 1352435, at * 8 (footnote omitted).

The Michigan Court of Appeals rejected Petitioner's ineffective assistance of counsel claim:

> Defendant's trial attorney testified concerning his motivations and reasons for the specific actions he took at trial. In particular, he

8

testified that because Wright had never identified his client as one of the assailants, he did not believe it would be prejudicial to admit Wright's transcribed testimony from Herbert's preliminary examination. Defense counsel also testified that he believed it would be less emotional for the jury if Wright did not appear in person at trial. It is not unreasonable for a defense attorney to stipulate to certain evidence in order to prevent a damaging witness from personally appearing before the jury.   Given counsel's testimony at the evidentiary hearing, it is clear that he made a reasonable, strategic decision to stipulate to the admission of Wright's transcribed testimony at defendant's trial.

*People v. Witherspoon*,  2013 WL 1352435, at * 9 (internal citation omitted).

Petitioner is not entitled to relief on this claim for several reasons.  First, trial counsel's decision to stipulate to Wright's preliminary examination testimony was a valid strategy that avoided a potentially emotional and sympathetic witness from appearing live to testify before the jury.  A trial attorney's decision to avoid cross-examining a sympathetic witness is a valid trial strategy that defeats an ineffective assistance of counsel claim. *See e.g. Muntaser v. Bradshaw*, 429 Fed. App'x 515, 522 (6th Cir. 2011).

Secondly, Petitioner was not prejudiced by the admission of Wright's preliminary examination testimony because she did not identify Petitioner as one of the suspects nor did she otherwise incriminate Petitioner.  Confrontation Clause violations are subject to harmless error review. *See Bulls v. Jones,* 274 F. 3d 329, 334 (6th Cir. 2001).  In *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the Supreme Court held that for purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial

and injurious effect or influence in determining the jury's verdict.  "The prejudice prong of the ineffective assistance analysis subsumes the *Brecht* harmless-error review." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).  Because Wright's testimony did not implicate Petitioner in the murder, kidnapping, or home invasion, the admission of her preliminary examination testimony at petitioner's trial was harmless error. *See U.S. v. Driver,* 535 F. 3d 424, 428 (6th Cir. 2008).  Because the admission of Wright's out-of-court statements was harmless error, Petitioner cannot satisfy *Strickland's* prejudice requirement. *See e.g. Bell v. Hurley,* 97 F. App'x 11, 17 (6th Cir. 2004).

Finally, to the extent that Petitioner contends that trial counsel was ineffective for failing to request the production of Ms. Wright for trial, Petitioner failed to show that Ms. Wright would have offered favorable testimony to the defense.  Counsel was thus not ineffective for failing to seek the production of Ms. Wright at his trial. *See Greene v. Lafler*, 447 F. Supp. 2d 780, 793 (E.D. Mich. 2006). Petitioner is not entitled to relief on his first claim.

In his third claim, Petitioner argues that trial counsel was ineffective for stipulating to the admission of the laboratory report from Bode Technologies, which linked Petitioner's DNA to the DNA found on the work gloves at the crime scene, rather than insisting that the laboratory technician who performed the DNA analysis appear at trial, where he could have been subject to cross-examination.

Petitioner is not entitled to relief on this claim for several reasons.  First, as the Michigan  Court of Appeals noted in its opinion, the admission of this report

was "akin to a foregone conclusion" and that "[f]aced with the inevitability of unfavorable testimony from an expert laboratory analyst, trial counsel decided to stipulate to the report's admission." *Witherspoon*, 2013 WL 1352435, at * 1.

Moreover, as the Michigan Court of Appeals also noted, *Witherspoon*, 2013 WL 1352435, at * 2, trial counsel knew, or should have known, that the same inculpatory DNA evidence could be introduced through the testimony of Ann Chamberlain, M.S., an independent DNA expert who had been appointed for the defense. Chamberlain found that Petitioner's DNA was present in at least one of the white work gloves recovered from the Ford Expedition, corroborating the prosecution's laboratory report. Under Michigan law, when an independent expert is appointed at public expense, that expert must make his or her findings available to both parties and may be called as a witness by either party. M.R.E. 706(a). Thus, even if trial counsel had successfully objected to the admission of the Bode Technologies report, DNA evidence linking petitioner to the crime scene still could have been introduced by the prosecution through Chamberlain's testimony. The Michigan Court of Appeals noted:

> Thus, rather than hiding from his own expert or trying to exclude the laboratory report, he [counsel] strategically decided to attempt to minimize the effect of the DNA evidence by focusing on another finding that Chamberlain had made. In particular, Chamberlain had also found DNA from an unknown, second source inside the white work glove. Relying on Chamberlain's finding in this regard, defense counsel stated during his closing argument that he had "never disputed that those gloves contained [defendant]'s DNA" and that "the science is the science ... can't change it." Instead, defense counsel passionately argued that because the gloves contained DNA from a second source,

11

"two people" must have worn the gloves, and this created reasonable doubt as to defendant's guilt.

*People v. Witherspoon*,  2013 WL 1352435, at *2 (internal footnote omitted).

The Michigan Court of Appeals concluded:

By stipulating to the admission of the laboratory report, defense counsel was merely conceding the inevitable, freeing him to strategically attack the DNA evidence by arguing that there was a second source of the DNA inside the gloves.

*People v. Witherspoon*, 2013 WL 1352435, at *3.

Petitioner was not prejudiced by his lawyer's decision to stipulate to the admission of the DNA evidence from the Bode Technologies Report, in light of the fact that this same evidence would have been introduced anyway in a more lengthy process without stipulations from counsel. *See Burke v. U.S.,* 261 F. Supp. 2d 854, 862 (E.D. Mich. 2003).  Petitioner is thus not entitled to relief on his third claim.

As part of his fifth claim, Petitioner contends that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct that he complains of in his fifth claim.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court determines *infra* that the prosecutor's comments or questions did not deprive petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528

(6th Cir. 2006).  In sum, Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

### B.  Confrontation Clause

In his second claim, petitioner contends that his Sixth Amendment right to confrontation was violated by the admission of the Bode Technologies Laboratory Report, because it constituted testimonial evidence.  Respondent contends that Petitioner's claim is waived because trial counsel stipulated to the admission of the report.

Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  A criminal defendant who has waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733-34). *See also Shahideh v. McKee*, 488 Fed. App'x 963, 965 (6th Cir. 2012) ("waiver is a recognized, independent and adequate state law ground for refusing to review alleged trial errors").  The right to confrontation may be waived, including by a failure to object to the "offending evidence." *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 314, n. 3 (2009).  Because defense counsel stipulated to the admission of this evidence, Petitioner has waived review of his Confrontation Clause claim. See *United States v. Chun Ya Cheung*, 350 F. App'x 19, 21-22 (6th Cir. 2009).  Moreover, a defendant in a criminal case cannot complain of error which he himself has invited. *Shields v. United States*, 273 U.S. 583, 586

(1927).  When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Fields v. Bagley,* 275 F. 3d 478, 486 (6th Cir. 2001).  By agreeing to the admission of the Bode Technologies Laboratory Report, Petitioner is precluded from seeking habeas relief on this claim.

### C.  Sufficiency of the Evidence

Petitioner next contends that there was insufficient evidence to establish his identity as one of the perpetrators of the murder, kidnapping, and home invasion. The Michigan Court of Appeals rejected this claim:

> Contrary to defendant's assertion, the prosecution presented DNA evidence and cell phone records that linked him to the crimes. As discussed previously, defendant's DNA was present inside the white work gloves recovered from the Ford Expedition. These gloves had White's blood on them. Moreover, the cell phone records indicated that, at the time of the killing, defendant was near the location where White's body was later discovered. The phone records also established that, during the time the crime was taking place, defendant uncharacteristically did not make any cell phone calls. We conclude that there was sufficient evidence of defendant's identity to permit the jury to find beyond a reasonable doubt that he was one of the perpetrators of the crimes.

*People v. Witherspoon*, 2013 WL 1352435, at *4.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court

14

to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

In the present case, there was strong circumstantial evidence which established Petitioner's identity as one of the perpetrators. Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,*

200 F.3d 987, 992 (6th Cir. 2000)(internal quotations omitted).  Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).

Eyewitness identification is not necessary to sustain a conviction. *See United States v. Brown,* 408 F. 3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub,* 194 F. Supp. 2d at 648.  In the present case, the DNA evidence adduced at trial was sufficient in and of itself to establish Petitioner's identity as one of the perpetrators. *See e.g. U.S. v. Seawood,* 172 F. 3d 986, 988 (7th Cir. 1999); *Kelley v. Jackson,* 353 F. Supp. 2d 887, 892 (E.D. Mich. 2005).  Petitioner's cell phone activity near the crime scene at the time of the crime was also circumstantial evidence that was sufficient to establish Petitioner's involvement. *See United States v. Starnes*, 552 F. App'x 520, 525 (6th Cir. 2014).

Because there were multiple pieces of evidence to establish Petitioner's identity as one of the perpetrators of the crimes in this case, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting Petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F. 3d 908, 919-21 (6th Cir. 2012).  Petitioner is not entitled to relief on his fourth claim.

### D.  Prosecutorial Misconduct

Petitioner next contends that he was denied a fair trial through prosecutorial misconduct.

16

Respondent contends that Petitioner's claim is procedurally defaulted because petitioner failed to object at trial. Petitioner claims that trial counsel was ineffective for failing to object to the alleged misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, the Court will consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

17

possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor made false and misleading statements in his closing argument when he stated that there was no other DNA source or, if the jury believed there was a second source, the DNA from this second donor was in such a small amount that it could not have been left by anyone involved in the shooting.  As the Michigan Court of Appeals noted in rejecting petitioner's claim, although Chamberlain testified that there was a small amount of DNA from a second, unknown donor inside the gloves, the prosecution presented evidence there was no second DNA source, thus, the prosecutor's argument was proper. *People v. Witherspoon*, 2013 WL 1352435, at *5.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F. 3d 689, 700 (6th Cir. 2000)(*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974)).  Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).  However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

In the present case, the Bode Technologies Laboratory Report indicated that there was only one DNA sample taken from the glove. The prosecutor's argument was not improper because there was some factual support for his comments. Because there was at least some factual support on the record for the prosecutor's argument, the prosecutor's remarks did not deprive petitioner of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). Furthermore, the judge instructed the jurors that the lawyers' arguments, questions, or statements were not evidence. (Tr. 7/23/10, pp. 181-82). A trial court can generally correct improprieties in a prosecutor's closing arguments by instructing the jury that closing arguments are not evidence. See *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011). Any alleged prosecutorial misconduct was thus ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

Petitioner next contends that the prosecutor committed misconduct by his improper cross-examination of defense expert Chamberlain. The Michigan Court of Appeals rejected petitioner's claim:

> It is true that the prosecutor asked Chamberlain about the reason for her dismissal from the Michigan State Police and her dislike of her former coworkers. But these matters were relevant to Chamberlain's potential bias.

*People v. Witherspoon*, 2013 WL 1352435, at *5.

Although petitioner has framed his improper impeachment claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*,

19

586 F. 3d 383, 397 (6th Cir. 2009).   The Michigan Court of Appeals held that the questions that the prosecutor asked about the reasons for Chamberlain's dismissal from the Michigan State Police and her dislike of her former co-workers were relevant to Chamberlain's possible bias. The Supreme Court has held that evidence that tends to show a witness's bias is relevant impeachment evidence and therefore admissible.  *United States v. Abel*, 469 U.S. 45, 51 (1984).  More importantly, for a prosecutor's cross-examination of a witness to rise to the level of prosecutorial misconduct, a defendant is required to show intentional misconduct or reckless disregard for the truth on the part of the prosecutor.  *See United States v. Sexton,* 119 Fed. App'x 735, 750 (6th Cir. 2005)*, vacated in part on other grounds,* No. 2005 WL 6011238 (6th Cir. Apr. 4, 2005).  The questions posed by the prosecutor to Ms. Chamberlain were relevant to establishing potential bias.  A prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle v. Bagley,* 457 F. 3d at 518.  Because the prosecutor's questions were relevant on the issue of Ms. Chamberlain's credibility, the questions did not deprive petitioner of a fair trial. *Tan Van Le v. Prelesnik,* 2006 WL 2620693, at *10 (W.D. Mich. Sept. 12, 2006) ("The [Supreme ]Court has never found misconduct arising from a prosecutor's cross-examination on a central issue such as witness bias.").  Petitioner is not entitled to relief on his fifth claim.

### E. Sentencing Claims

In his sixth claim, Petitioner contends that the trial judge incorrectly scored his sentencing guidelines for the kidnapping and home invasion charges and failed to consider mitigating evidence on petitioner's behalf. [2]

State courts are the final arbiters of state law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002). Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002). Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim.

---

[2]  Respondent suggested that this Court decline to review petitioner's sentencing claims under the concurrent sentence doctrine, because petitioner is serving a nonparolable life sentence on his first-degree murder conviction. The concurrent sentence doctrine allows a federal court to decline to review habeas corpus petitions "which challenge criminal convictions that have resulted in sentences, and other collateral consequences, which are wholly subsumed by those conferred by other unassailable convictions." *Wilson v. Straub,* 185 F. Supp. 2d 766, 769 (E.D. Mich. 2002)(internal quotation omitted). A court should exercise its discretion to decline to review a habeas claim under the concurrent sentence doctrine only in cases where it is clear that there are no collateral consequences to the petitioner and the issue does not involve a significant question that merits consideration. *Id.* "The concurrent sentencing doctrine is a discretionary one, and courts 'are admittedly hesitant to apply [it].'" *Groves v. Meko*, 516 Fed. App'x 507, 508 (6th Cir. 2013)(quoting *Dale v. Haeberlin*, 878 F.2d 930, 935, n. 3 (6th Cir. 1989)). The Court declines to invoke the concurrent sentence doctrine because respondent made no effort to demonstrate a lack of collateral consequences attaching to petitioner's sentences on the other offenses. See *Pillette v. Berghuis*, 408 F. App'x 873, 886, n. 8 (6th Cir. 2010).

*See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

To the extent that Petitioner is arguing that the trial court failed to afford him individualized consideration of mitigating evidence on his behalf, this claim fails because the Supreme Court has limited its holding concerning mitigating evidence to capital cases. *See Alvarado v. Hill,* 252 F. 3d 1066, 1069 (9th Cir. 2001)(citing to *Harmelin v. Michigan,* 501 U.S. 957, 996 (1991)). Because petitioner had no constitutional right to an individualized sentence, no constitutional error occurred when the state trial court failed to consider mitigating evidence on his behalf at sentencing. See *Hastings v. Yukins,* 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002). Petitioner is not entitled to relief on his sixth claim.

### IV.  Conclusion

For the reasons set forth above, the petition for writ of habeas corpus is **DENIED**. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To

demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Millender v. Adams,* 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal

*in forma pauperis.*

       **SO ORDERED**.


                             s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE

Dated:  May 17, 2016

## Certificate of Service

       I hereby certify that this Order was electronically submitted on May 17, 2016, using the CM/ECF system, which will send notification to each party.

                             s/A. Chubb
                             Case Manager